**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CONTINENTAL CASUALTY COMPANY and
COLUMBIA CASUALTY COMPANY,

    Plaintiffs/Counter-Defendant,         Civil Action No. 05-73918

v.         HONORABLE DENISE PAGE HOOD

INDIAN HEAD INDUSTRIES, INCORPORATED,

    Defendant/Counter-Plaintiff.
_____/

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**ON THE ISSUE OF ALLOCATION,**
**NOTICE OF STATUS CONFERENCE,**
**AND**
**ORDER LIFTING STAY**

## I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment on the Issue of Allocation. Briefs have been filed and a hearing was held on the matter. For the reasons stated below, Plaintiff's Motion for Partial Summary Judgment on the Issue of Allocation **[Docket No. 24, filed September 6, 2006]** is GRANTED. A hearing was held on the matter.

## II. STATEMENT OF FACTS

Since 1994, Continental Casualty Company ["Continental Casualty"] has defended and indemnified Indian Head Industries, Inc. ["Indian Head"] against numerous asbestos-related lawsuits. The underlying claimants have asserted exposure to asbestos-containing products manufactured by Indian Head, or one of its predecessors. Claimants allege exposure as early as the 1940's as well as continued exposure through the present.

In April, 1984, Continental Casualty issued a policy of primary liability insurance, GLP 062339817, to Indian Head with effective dates of April 8, 1984 through April 8, 1985. In April, 1985, Continental Casualty issued a renewal of policy number GLP 062339817, with effective dates of April 8, 1985 through April 8, 1986. In April, 1986, Continental Casualty again renewed policy number GLP 062339817, with effective dates of April 8, 1986 through April 8, 1987. Although Continental Casualty is able to point to policy numbers issued from April 8, 1987 through April 8, 1988 and April 8, 1988 through April 8, 1989, Continental Casualty contends that Indian Head has failed to provide full and complete copies of such policies. Continental Casualty alleges that, to the extent that it issued liability insurance policies for periods beginning on or subsequent to April 8, 1987, those policies contained "absolute asbestos" exclusions.

Continental Casualty seeks in its Complaint, *inter alia,* a declaration that: it is only required to pay a pro rata share of defense and indemnity related to the underlying lawsuits, it is entitled to contribution and/or reimbursement from Indian Head for any payments toward defense or indemnity made in excess of its obligations, and it does not owe any duties of defense or indemnity to Indian Head under certain insurance policies issued by Columbia Casualty.

Indian Head seeks a declaration that Continental Casualty may not allocate to the insured the indemnity expense of its contractual promise to pay "all sums" which Indian Head becomes legally obligated to pay as damages because of bodily injury imposed by the underlying asbestos-related lawsuits or the defense of its contractual promise to defend Indian Head from such suits even if such suits are false and fraudulent.

In its motion, Continental Casualty seeks a declaration on the issue of allocation of defense costs and indemnity with regard to underlying asbestos-related claims for which dates of exposure

and diagnosis have been provided, all defense costs incurred after the filing of the present action (October 12, 2005), must be apportioned between Continental Casualty and Indian Head to reflect Continental Casualty's pro rata alleged limited time-on-the-risk and that the same allocation apply to any future damages or funding of settlements.

## III.     STANDARD OF REVIEW

The standard that must be satisfied to secure a dismissal via summary judgment is high. Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be apparent from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

## IV.     APPLICABLE LAW AND ANALYSIS

### A.     Applicable Law

"In a contract diversity action such as this, Michigan conflict of law rules require the application of the law of the place where the insurance policies were issued and countersigned." *Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 451 F. Supp. 1230, 1237 (E. D. Mich. 1978). Accordingly, in the instant action, Michigan law applies to the interpretation of the

3

policies, as they were issued and delivered to Indian Head in Michigan. (Mot. at 3-4, Ex.'s A, B, and C to Affidavit of Lisa A. Pach). In Michigan, insurance contracts are to be liberally construed in favor of the insured and against the insurer. *Forty-Eight Insulations,* 451 F. Supp. at 1237 (citing *J.L. Simmons Co. v. Fidelity and Casualty Co.*, 511 F.2d 87 (6th Cir. 1975)).

### B. Pro Rata Time-on-the-Risk

Continental Casualty asserts that there is a dispute in this matter regarding the appropriate trigger of coverage for the underlying asbestos-related bodily injury claims. Continental Casualty maintains that many, if not most, of the underlying asbestos claimants do not allege "bodily injury" during the policy period of the Continental Casualty policies and therefore are not within the coverage provided by those policies. However, for purposes of this motion, Continental Casualty stipulates that the underlying asbestos-related claims assert "bodily injury," as defined in the Continental Casualty policies, during each year from the date of the first alleged exposure to asbestos through the date of diagnosis with an asbestos-related disease. (Mot. at 8). The Court's ruling on this motion is only applicable to claims asserting bodily injury.

Continental Casualty asserts that a "time-on-the-risk" method of apportionment is the proper method for apportioning liability in the instant case. *Arco Industries, Corp. v. American Motorists Insurance Co.*, 232 Mich. App. 146 (1998); *Insurance Co. of North America v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212 (6th Cir. 1980). In *Forty-Eight Insulations*, affirming the District Court's ruling, the Sixth Circuit considered insurance carriers' duty to defend or indemnify a manufacturer of asbestos products for judgments against it in a number of pending lawsuits. The Sixth Circuit held that an insurer must bear the entire cost of defense when "there is no reasonable means of prorating the costs of defense between the covered and the non-covered items." *Forty-*

*Eight Insulations,* 633 F.2d at 1224 (quoting *Nat'l Steel Construction Co. v. Nat'l. Union Fire Ins. Co.*, 14 Wash. App. 573 (1975)).  However, these considerations are inapplicable where defense costs can be readily apportioned -

> The duty to defend arises solely under contract. An insurer contracts to pay the entire cost of defending a claim which has arisen within the policy period.  The insurer has not contracted to pay defense costs for occurrences which took place outside the policy period.  Where the distinction can be readily made, the insured must pay its fair share for the defense of the non-covered risk.

*Id.* at 1224-25.

Indian Head, on the other hand, argues that the language in the subject policies mandates that the appropriate allocation of defense and indemnity costs is an "all sums" allocation.  (Def.'s Br. in Resp. at 5).  The "all sums" allocation holds the insurer on each triggered policy fully liable even if the subject injury began before, and continued after, the insurer's policy period.  *Arco,* 232 Mich. App. at 160 (citing *Keene Corp. v. Ins. Co. of North America*, 667 F.2d 1034 (D.C. Cir. 1981).  Further, Indian Head argues that Continental Casualty's reliance on *Century Indemnity Co. v. Aero-Motive Co.* is misplaced because it is not clear whether the *Aero-Motive* policies contained an "all sums" allocation provision.  *Century Indemnity Co. v. Aero-Motive Co.,* 318 F. Supp. 2d 530 (W.D. Mich. 2003).

Indian Head urges that the starting point in insurance coverage analysis in Michigan is the policy language itself.  *Gelman Sciences, Inc. v. Fidelity and Casualty Co. of New York*, 456 Mich. 305, 317 (1998).  Indian Head claims that Continental Casualty does not focus on the policy language at issue to support its position.  Indian Head argues that the policy language in the cases Continental Casualty cites, in support of its position, materially differs from the policy language in the subject policies.  Indian Head asserts that the Michigan Supreme Court has not addressed

5

allocation of defense and indemnity in an asbestos-related or continuing injury case and therefore *Dow Corning v. Continental*, 1999 WL 33435067 (Mich. App. Oct. 12, 1999)(unpublished), the underlying facts of *Arco, supra,* and *Stryker Corp. v. National Union Fire Insurance Company*, 2005 WL 1610663 (W.D. Mich. Jul. 1, 2005)(unpublished), would support the conclusion that the Michigan Supreme Court would hold the "all sums" approach applies in the instant case.

Indian Head argues that in *Dow Corning,* the Michigan Court of Appeals endorsed the "all sums" allocation approach in a case involving breast implant litigation where the underlying plaintiffs claimed the implants caused autoimmune injuries spanning multiple policy periods. In the *Dow Corning* case, the policy language at issue was as follows,

> The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the insured for <u>all sums</u> which the Insured shall be obligated to pay by reason of the liability
>
> a) imposed upon the Insured by law,
>
> or
>
> b) assumed under contract or agreement by the Named Insured
>
> for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of: –
>
> i) Personal injuries,
>
> caused by or arising out of each occurrence.

1999 WL 33435067 at *6. "Occurrence" was defined in the *Dow Corning* policies as,

> an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

*Id.* at *4. Indian Head argues that this language supports the "all sums" approach. Although the *Arco* court did not follow the "all sums" approach but instead upheld the pro rata time-on-the-risk theory of allocation, Indian Head argues that *Dow Corning* correctly points out that the *Arco* panel did not address the language in the policy and "overlooked" the "all sums" language in the policy. Indian Head asserts that *Arco's* reasoning confused and blurred the line between the trigger of the coverage (injury during the policy period) and the scope of the coverage. Indian Head further argues that the *Stryker* case rejected the "all sums" approach based on the absence of the language in the policy stating that the insurer was obligated to cover "all sums."

Although the policy language in *Arco* may be similar to that in the case at hand and includes the language "all sums," Indian Head argues that the case does not adequately address the use of this language. The later opinion of *Dow Corning* pinpointed this problem with *Arco's* treatment of the "all sums" language, asserts Indian Head. Although the *Stryker* case rejected the "all sums" approach, Indian Head claims that the rejection was based on the fact that the policy language in that case did not contain the "all sums" language. For these reasons, Indian Head urges the Court to adopt the "all sums" approach.

The Court's analysis of coverage under an insurance policy must be grounded in the policy language. *Gelman,* 456 Mich. at 316. Where the policy language is clear and unambiguous, a court must enforce the terms as written and not rewrite the plain contract language. *Id.* Ambiguous provisions are construed in favor of the policyholder and in favor of coverage. *Id.* The relevant language in the Continental Casual policy provides,

        I.     COVERAGE A-BODILY INJURY LIABILITY
              COVERAGE B–PROPERTY DAMAGE LIABILITY

> The company will pay on behalf of the insured ***all sums*** which the insured shall become legally obligated to pay as damages because of
>
> > A.  bodily injury or
> > B.  property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(Policy, Bates No. IHI 009142)(emphasis added). The policy further provides,

> "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured; . . .

(Policy, Bates No. IHI 009141) "'[B]odily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom; . . ." (Policy, Bates No. IHI 009140).

Based upon the above-quoted language, the Court interprets the policy as follows: Continental Casualty must pay "all sums" damages Indian Head becomes obligated to pay because of "bodily injury" caused by an "occurrence." An "occurrence" is clearly defined as an accident, including continuous or repeated exposure to conditions, resulting in "bodily injury." "Bodily injury" clearly means injury, sickness or disease which occurred "during the policy period." Death from the bodily injury, sickness or disease, may occur "at any time." The policy language is clear that the "bodily injury" (other than death) must have occurred during the policy period. The

8

"occurrence" – meaning the accident or, in this case, the exposure to the conditions, may not necessarily occur "during the policy period" since "occurrence" is not limited by time under the definition. This means the "occurrence" may have occurred prior to the policy period. The policy only requires that the "occurrence" or accident or exposure must result in "bodily injury." The "bodily injury" definition sets forth a time limitation. The "bodily injury" (other than death) must occur "during the policy period."

The issue then is what does the phrase "all sums" mean as it relates to allocation of the risk under the policy. Both parties, as noted above, have cited various cases to support their positions.

*Dow Corning* has limited precedential value, as it is an unpublished opinion and, as asserted by Continental Casualty, the Michigan Supreme Court affirmed *Arco* after the *Dow Corning*[1] opinion was issued. In *Arco*, the Michigan Court of Appeals, in a published opinion, applied the "time-on-the-risk" method to apportion pollution remediation costs among successive insurers for continuous property damage. *Arco,* 232 Mich. App. at 161-62. As noted by Indian Head, the *Arco* policy contained the "all sums" language, as does the Continental Casualty policy at issue. *Id.* at 152. The *Arco* court ruled that the "time-on-the-risk" method of apportionment should be used in cases "involving continuous property damage and successive policies of liability coverage." *Id.* at 161. The *Arco* court "primarily" based its conclusion on the Michigan Supreme Court's decision in *Arco Industries Corp. v. American Motorists Ins. Co.,* 456 Mich. 305 (1998)(*Arco II)* where the Michigan Supreme Court applied the "injury-in-fact" trigger of coverage. *Arco*, 232 Mich. App. at 162. The *Arco* panel stated that the logical corollary from the *Arco II* decision was that the insurer

---

[1] *Arco* was decided on October 9, 1998; *Dow Corning* was released on October 12, 1999; and *Arco*, 462 Mich. 896 (Mich. 2000)(Table), was summarily affirmed by the Michigan Supreme Court on June 22, 2000 by equal division.

must provide coverage for damage sustained during the policy period, but not for damage sustained during the years outside the policy period. *Id.* The *Arco* panel concluded that a "pro rata by limits" or "all sums" allocation is inconsistent with the actual injury trigger theory. *Id.*

The *Aero-Motive* court addressed the discrepancies between *Arco*, *Forty-Eight Insulations* and *Dow Corning*. *Aero-Motive,* 318 F. Supp. 2d at 544-45. The *Aero-Motive* court stated,

> The Court concludes that defense costs should be apportioned among the insurers because the rationale of *Forty-Eight Insulations* applies and the result is consistent with the *Arco Industries*, which rejected any method of allocation that would require the insurer to pay for any damage occurring outside the policy period. Here, the defense costs can be readily apportioned among the insurers, so it is reasonable to do so . . . To the extent that *Dow Corning Corp. v. Continental Casualty Co.*, No. 200143, 1999 WL 33435067 (Mich. App. Oct 12 1999) (per curiam), conflicts with *Arco Industries*, the Court declines to follow it because *Arco Industries* is consistent with the Sixth Circuit's approach with respect to defense costs. In addition, *Dow Corning* is distinguishable from this case because the policy in *Dow Corning* contained language stating that the insurer would pay damage arising out of an occurrence that is continuing at the time of termination of the policy.

*Id.* at 545. The Continental Policy at issue does not contain language addressing injuries that extend outside the policy period. The *Dow Corning* policy expressly addressed injuries that extended outside the policy period. *Dow Corning*, 1999 WL 33435067, at *8. Specifically, the definition of "personal injury" in the *Dow Corning* policy did not have a time limitation. The "personal injury" must have arisen from an "occurrence." The definition of "occurrence" in the *Dow Corning* policy had a time limitation–during the policy period. The *Dow Corning* policy therefore covered "personal injury," which may manifest after the policy period, so long as the exposure "occurred" during the policy period. In other words, the "personal injury" in the *Dow Corning* policy need not occur during the policy period. The Continental Casualty policy language at issue requires that the

"bodily injury" must occur during the policy period.

The analysis of the court in *Stryker* is on point. In *Stryker*, acknowledging that the Michigan Supreme Court has not addressed which method of allocation applies to continuous injury cases, the District Court endeavored to ascertain what the Michigan Supreme Court would decide if faced with this issue. *Stryker,* 2005 WL 1610663 at *3. The court discussed *Arco* in relation to *Dow Corning* and concluded that, if presented with the facts in *Stryker*,[2] the Michigan Supreme Court would adopt the pro rata "time-on-the-risk" method of allocation applied in *Arco*. The *Stryker* court provided four reasons for reaching this conclusion. First, the policy language controls the determination of coverage, citing *Gelman, supra.* In this case, Continental Casualty is obligated to provide coverage for bodily injury which occurs during the policy period. Further, as discussed above, *Dow Corning* is distinguishable from the present case because the holding was premised on a clause providing that the insurer would continue to provide coverage if an injury continued beyond the time of termination of the policy.

Second, the *Stryker* court determined that policy language which obligates the insurer to provide coverage for the policy period only, not for damages arising before or after the policy period, is consistent with pro rata allocation. Similar to the policy language in *Stryker*, the Continental Casualty coverage provision is not ambiguous, as it provides coverage for liability resulting from bodily injury during the policy period.

Third, the *Stryker* court found that the pro rata "time-on-the-risk" allocation is consistent with the "injury in fact" trigger of coverage applied by the Michigan Supreme Court in *Gelman*

---

[2] In *Stryker*, the insured sought insurance coverage for claims and lawsuits arising out of bodily injury caused by the implantation of artificial knees.

11

*Sciences*. In *Gelman Sciences*, the court found the "injury in fact" approach appropriate to policy language almost identical to that at issue in the instant case. The policy language in this case provides, "bodily injury means bodily injury, sickness or disease sustained by any person which occurs *during the policy period*, including death at any time resulting therefrom . . ." (emphasis added). This language is similar to the policy language in *Gelman Sciences*, according to the plain language of the policies at issue, bodily injury "must occur during the time the policy is in effect in order for it to be indemnifiable, i.e., the policies dictate an injury-in-fact approach." *Stryker*, 2005 WL 1610663 at ** 4, 7.

Finally, the *Stryker* court notes the simplicity and predictability of the pro rata "time-on-the-risk" allocation method. *Id.* at *8. In *Stryker*, this method could easily and fairly be applied to allocate Stryker's damages between two insurer's policies. *Id.* This last factor is not as easily resolvable at the present time given that factual issues of years of coverage have not yet been resolved; however, when resolved, the pro rata "time-on-the-risk" allocation method should be applied to the defense and indemnity costs incurred after the filing of the present action asserting "bodily injury," as defined by the policy provisions.

A supplemental case submitted by Continental Casualty further supports its position. In *City of Sterling Heights v. United Nat'l Ins. Co.,* 2007 WL 172529 (E.D. Mich. Jan. 19, 2007)(unpublished), the court reached the same result as in *Arco, Stryker, and Aero-Motive.* The district court noted that the policy language at issue, which included an "all sums" term, was consistent with those found in *Arco* and not in *Dow Corning.* The district court's application of the "time-on-the-risk" method of allocation is persuasive because it is consistent with the "injury in fact" trigger for coverage adopted by the Michigan Supreme Court. *Sterling Heights,* 2007 WL

12

172529 at *5. The district court stated that the "time-on-the risk" method is inherently simple to apply promoting predictability, reduces incentives to litigate and ultimately reduces premiums. *Id.* As noted by the *Sterling Heights* opinion, the Michigan Supreme Court in *Gelman* declined to decide the best method of allocation, but instructed that the "courts should not employ a strict standard of proof regarding injury in fact and should endeavor to instead to fairly allocate the risk." *Id.* at *3 (citation omitted). The Sixth Circuit, in affirming the district court in *Sterling Heights,* noted that the time-on-the-risk formula, like all estimates, contains risks of imprecision. *Id.* at *5. The Sixth Circuit was well aware that in certain circumstances, such as the *Sterling Heights* case, it is impossible to determine with certainty whether all the damages were caused by the injury in that case (defamation). *Id.* In such a case of "indivisible" damages the time-on-the-risk formula, though imprecise, provides that "a party is as apt to be a rough-justice winner in some respects as a rough-justice loser in others." *Id.*

Based on the above analysis, the Court finds that the pro rata time-on-the-risk method must be applied in this case. Although the estimate contains risks of imprecision, as noted by the Sixth Circuit, all other estimates contain such a risk. The cases cited by Continental Casualty in support of its position, with or without the "all sums" language, found that the pro rata time-on-the-risk method must be applied. As the Michigan Supreme Court cautioned, courts should endeavor to fairly allocate the risk. The pro rata time-on-the-risk method fairly allocates the risk Continental Casualty entered into when it issued the policy to Indian Head. The policy language at issue supports such an interpretation.

**V.   CONCLUSION**

For the reasons set forth above,

13

IT IS ORDERED that Plaintiff Continental Casualty's Motion for Partial Summary Judgment on the Issue of Allocation (**No. 24, filed September 6, 2006**) is **GRANTED.** The Court declares that the pro rata time-on-the-risk method of allocation be used in the policy at issue. The Court offers no opinion as to the remaining issues raised in the remaining motions which were not raised in the instant motion.

IT IS FURTHER ORDERED that a Status Conference be held in this matter on **Monday, February 8, 2010, 2:45 p.m.** to address further discovery and hearing dates.

IT IS FURTHER ORDERED that the STAY in this action is LIFTED.

S/Denise Page Hood<br>
Denise Page Hood<br>
United States District Judge

Dated: January 15, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 15, 2010, by electronic and/or ordinary mail.

S/William F. Lewis<br>
Case Manager