**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CONTINENTAL CASUALTY COMPANY and
COLUMBIA CASUALTY COMPANY,

    Plaintiffs/Counter-Defendants,               Civil Action No. 05-73918

v.                                                        HONORABLE DENISE PAGE HOOD

INDIAN HEAD INDUSTRIES, INCORPORATED,

    Defendant/Counter-Plaintiff.
_____/

**ORDER REGARDING MOTIONS FOR PARTIAL SUMMARY JUDGMENT**
**FILED BY INDIAN HEAD INDUSTRIES, INC.**
**AND**
**NOTICE SETTING STATUS CONFERENCE**

**I.    INTRODUCTION/BACKGROUND**

This matter is before the Court on three motions for partial summary judgment filed by Defendant/Counter-Plaintiff Indian Head Industries, Inc. ("Indian Head Industries"). Briefs have been filed and a hearing held on the matter.

Indian Head Industries, with its principal place of business in Charlotte, North Carolina, first came into existence in 1984. (Counterclaim, ¶ 2) Indian Head Industries entered into an agreement with Thyssen-Bornemisza, Inc., by which Indian Head Industries purchased virtually all of the assets and properties of Thyssen-Bornemisza's Detroit Gasket Division, including the trade name "Detroit Gasket." (First Am. Comp., ¶ 13)  From 1984 until 1989, Indian Head Industries owned and operated Detroit Gasket which made and sold asbestos containing gaskets for automotive use. (Counterclaim, ¶ 2) In April 1984, Continental Casualty Company ("Continental Casualty") issued a policy of primary liability insurance, GLP 062339817, to Indian Head Industries with effective

dates of April 8, 1984 through April 8, 1985. The policy was renewed annually through April 8, 1989. (First Am. Comp., ¶ 15; Counterclaim, ¶ 9) The Continental Casualty policies included the following definition at issue in this case, "'[B]odily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." (First Am. Comp., ¶ 18) The Continental Casualty policies also included an exclusion (Exclusion "a") which provided that the policies do not apply to liability assumed by the insured under any contract or agreement except an "incidental contract" (as defined in the policies). (First Am. Comp., ¶ 19)

The provision at issue in each of the Continental Casualty policy provides,

> I. COVERAGE A-BODILY INJURY LIABILITY
> COVERAGE B–PROPERTY DAMAGE LIABILITY
>
> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> > A. bodily injury or
> > B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
>
> **Exclusions**
>
> This insurance does not apply:
>
> (a) to liability assumed by the insured under any contract or agreements except an incidental contract; but this exclusion

>   does not apply to a warranty of fitness or quality of the named Insured's products or a warranty that work performed by or on behalf of the named Insured will be done in a working like manner.

(Policy, Bates No. IHI 009142).

Columbia Casualty Company ("Columbia") issued umbrella liability policies to Indian Head between 1984 and 1989. (First Am. Comp., ¶ 22) The umbrella policies issued by Columbia in effect for the 1985 through 1989 policy periods attached an endorsement, the "Asbestos Exclusion Endorsement," which provides:

>   It is understood and agreed that such insurance as is afforded by this policy does not apply to any and all liability for bodily injury, disease, or illness, including death at any time resulting therefrom, or property damage, for past, present, or future claims arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, rebranding, installation, repair, removal encapsulation, abatement, replacement or handling of, or exposure to, asbestos or products containing asbestos whether or not the asbestos is or was at any time airborne as a fiber or particle, contained in a product, carried on clothing, transmitted in any fashion, or found in any form whatsoever.
>
>   It is further understood and agreed that this policy will not become excess of any reduced or exhausted underlying aggregate limit of liability or aggregate self-insured retention to the extent such reduction or exhaustion is the result of claims, damage or loss excluded by this endorsement.

(First Am. Comp., ¶ 24)

Indian Head Industries has been named as a defendant in underlying lawsuits involving more than 50,000 plaintiffs alleging various claims, including bodily injury, sickness or disease as a result of exposure to asbestos in products manufactured and sold by Indian Head Industries and/or manufactured and sold by an alleged predecessor company. (First Am. Comp., ¶¶ 27-28; Counterclaim, ¶ 7) The underlying suits allege exposure to asbestos from products manufactured by

various companies, including "Detroit Gasket," "Detroit Gasket & Mfg. Co.," and/or "Detroit Gasket & Manufacturing Company." (First Am. Comp., ¶ 29) The underlying suits allege that Indian Head Industries is liable as "successor in interest" or "equitable trustee" of these entities. (First Am. Comp., ¶ 30)

Continental Casualty defended Indian Head Industries against the underlying suits from 1986 until 2004. (Counterclaim, ¶ 11) Indian Head Industries asserts that in 1994, after thousands of underlying suits were tendered by Indian Head Industries to Continental Casualty for defense and indemnity, Continental Casualty stated its coverage position to Indian Head Industries without reserving any rights and without setting forth any limitation upon its obligation to provide "all sums" defense and indemnity coverage. (Counterclaim, ¶ 15) Indian Head Industries claims that in about 2004 Continental Casualty "switched" its interpretation of the policies after almost 20 years of interpretation providing for full, "all sums" defense and indemnity. Only since the "switch" in interpretation in about 2004 has Continental Casualty claimed duties less than full, "all sums" defense and indemnification. (Counterclaim, ¶ 16) Since 2004, Indian Head Industries asserts that Continental Casualty has now "tardily" issued several "reservation of rights letters" purporting to dispute coverage and defense obligations under the policies. (Counterclaim, ¶ 17) Indian Head argues that Continental Casualty's "switch" in interpretation is at odds with, and irreconcilable with, its past interpretive conduct. (Counterclaim, ¶ 20)

The First Amended Complaint filed by Continental Casualty and Columbia alleges: Declaratory Relief Missing Policies (Count 1); Declaratory Relief Asbestos Exclusions (Count II); Declaratory Relief Exclusion for Liability Assumed by Contract (Count III); Declaratory Relief No Coverage for Injuries Occurring Outside of Policy Periods (Count IV); Declaratory Relief Allocation

4

of Defense Costs (Count V); Declaratory Relief Allocation of Damages (Count VI); and, Declaratory Relief Contribution (Count VII). Continental Casualty seeks contribution from Indian Head Industries toward Continental Casualty's expenditures since October 12, 2005, in excess of its obligations. (First Am. Comp., p. 15)

The "Prayer for Relief" set forth in Indian Head Industries' Counterclaim seeks a declaration that: Continental Casualty is obligated to defend and indemnify Indian Head Industries for all sums incurred in defense of all the underlying suits; that Continental Casualty is not permitted to prorate coverage for defense or indemnity; that the policies are triggered for full, all sums defense and indemnification of the underlying suits without proration or limitation because they allege and seek to provide that bodily injury occurred during the policy period; that Exclusion "a" of the policies is inapplicable; that Continental Casualty waived any right to or is estopped from contesting the coverage for defense and indemnity or seeking proration or limitation of such coverage; and, that Indian Head Industries is free of any obligation to contribute any money to Continental Casualty to share in the cost of defense and/or indemnity and free of any obligation to reimburse Continental Casualty for any amount so far expended in defense and indemnity. (Counterclaim, "Prayer for Relief")

On January 15, 2010, the Court issued its order on the Issue of Allocation motion filed by Continental Casualty. On March 30, 2012, the Court denied Indian Head Industries' Motion to Strike Motion for Order Revising or Rescinding the Court's Opinion and Order Granting Plaintiff's Motion for Partial Summary Judgment on the Issue of Allocation and Indian Head Industries' Cross Motion for Partial Summary Judgment on the Issue of Allocation. The Court addresses below the three remaining partial summary judgment motions filed by Indian Head Industries.

## II.     ANALYSIS

### A.     Summary Judgment Standard

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

"In a contract diversity action such as this, Michigan conflict of law rules require the application of the law of the place where the insurance policies were issued and countersigned." *Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 451 F. Supp. 1230, 1237 (E. D.

Mich. 1978). In Michigan, insurance contracts are to be liberally construed in favor of the insured and against the insurer. *Forty-Eight Insulations,* 451 F. Supp. at 1237 (citing *J.L. Simmons Co. v. Fidelity and Casualty Co.*, 511 F.2d 87 (6th Cir. 1975)).

A court's analysis of coverage under an insurance policy must be grounded in the policy language. *Gelman Sciences, Inc. v. Fidelity and Casualty Co. of New York*, 456 Mich. 305, 316 (1998), *overruled on other grounds by Wilkie v. Auto-Owners Ins. Co.,* 469 Mich. 41 (2003). Where the policy language is clear and unambiguous, a court must enforce the terms as written and not rewrite the plain contract language. *Id.* at 317. Ambiguous provisions are construed in favor of the policyholder and in favor of coverage. *Id.*

### B. Defendant Indian Head Industries' Motion for Partial Summary Judgment With Respect to the Issue of Trigger of Coverage (Doc. No. 46)

It is noted that in Indian Head Industries' various partial summary judgment motions, many of the same arguments are raised.[1] In this motion, the Court will only address the "injury in fact" trigger issue since the other arguments raised in this motion are raised in the other motions filed by the parties which are addressed below or have been addressed by the Court in a previous order.

In this motion, Indian Head Industries argues that the policies at issue mandate an "injury in fact trigger" and not an "exposure and manifestation" trigger as asserted by Continental Casualty. Continental Casualty responds that based on this Court's January 15, 2010 Order on the issue of allocation, Continental Casualty agrees that an "injury in fact" trigger should apply to potential coverage on claims against Indian Head Industries.

Specifically, Continental Casualty stipulates that an "injury in fact" trigger will apply if

---

[1] The Local Rules now prohibits more than one summary judgment motion filed by a party without leave of court. See E.D. Mich. LR 7.1(b).

defense costs and indemnity payments are to be allocated pro-rata pursuant to the Court's January 15, 2010 Order and when Indian Head Industries presents evidence that an underlying asbestos plaintiff is alleging "bodily injury" as defined in the relevant policies. Absent evidence to the contrary, Continental Casualty agrees that "bodily injury" is deemed as having continuously occurred from the alleged first date of exposure to asbestos to the alleged first date of manifestation of an asbestos-related disease. (Doc. No. 98, Resp., p. 2)

In its reply, Indian Head Industries argues that contrary to its previous position, Continental Casualty now agrees that the "injury in fact" trigger applies, but only if the defense costs and indemnity payments are allocated pro-rata. Indian Head asserts that the Court should reject the limitation that the "injury in fact" trigger only applies to the policy language at hand if time on the risk allocation applies. Indian Head Industries asserts that this Court's January 15, 2010 Order does not support such a limitation.

Both parties now agree that the "injury in fact" trigger applies in determining coverage in the underlying suits. The Court so finds that the "injury in fact"[2] approach to determining whether or when coverage is triggered applies to the policies at issue. The Court's January 15, 2010 Order

---

[2] There are four trigger theories noted by the Michigan Supreme Court. The *exposure trigger* places the "occurrence" at the earliest time, i.e., when the exposure to injury-causing conditions occurs. In the environmental pollution context, this is the date on which the pollution began. The *manifestation trigger theory* places the "occurrence" at the latest possible time, i.e., when the property damage is ultimately discovered. Some courts describe this trigger as when the injury manifests itself in the form of ascertainable property damage. The *injury-in-fact trigger* approach is actual property damage. Under this theory, the finder of fact (in the underlying suits) must determine when exposure to the pollutants resulted in actual property damage based on the facts of a given case. The final theory, known as the *"continuous," "triple," or "multiple" trigger*, holds that the injury occurs continuously from exposure until manifestation, resulting in liability for all insurers who assumed risk from the initial pollution through discovery of property damage. *Gelman Sciences,* 456 Mich. at 313.

addressed the issue of allocation but did not expressly rule that the "injury in fact" trigger applies *only* if the "time on the risk" allocation applies. Although the Court found that the "time on the risk" allocation applies to the policies at issue, this does not limit the application of the "injury in fact" trigger. The allocation only comes into play "once a settlement is reached and liability is found for all triggered insurers, the real issue becomes whether the injury or damage suffered during the different policy periods is indivisible." *City of Sterling Heights v. United Nat. Ins. Co.,* 2007 WL 172529 at *6 (E.D. Mich. Jan. 19, 2007). The pro rata "time on the risk" allocation method is used when the underlying suits are resolved either by settlement or a finding of liability. The "injury in fact" trigger method is used to determine at what point in time is coverage applicable. This determination is made before the allocation issue arises. The "injury in fact" trigger analysis is not limited by the allocation determination. The allocation determination is made at the time the underlying suits are resolved by way of settlement or a finding of liability. At this point in time in the underlying suits, the "injury in fact" trigger is not limited by the allocation issue. For this reason, the Court grants Indian Head Industries' Motion for Partial Summary Judgment on the "injury in fact" trigger issue.

### C. Defendant Indian Head Industries' Motion for Partial Summary Judgment with respect to Count III, Exclusion "a," of Plaintiffs' Complaint (Doc. No. 45)

Indian Head Industries moves for summary judgment that Exclusion "a" in the policies does not preclude coverage for the underlying suits based on the 1984 agreement. Indian Head Industries in the 1984 agreement agreed to indemnify and hold harmless Thyssen-Bornemisza from all claims and liabilities arising from the products sold by Thyssen-Bornemisza before the 1984 sale occurred. Continental Casualty responds that Exclusion "a" precludes coverage because Indian Head Industries contracted to assume liability for the tort obligations of Thyssen-Bornemisza pursuant to

9

the 1984 agreement between the parties.

As set forth above, Exclusion "a" provides,

This insurance does *not* apply:

(a) *to liability assumed by the insured under any contract or agreements* except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named Insured's products or a warranty that work performed by or on behalf of the named Insured will be done in a working like manner.

(Policy, Bates No. IHI 009142)(emphasis added). Neither party suggests that the 1984 agreement was an incidental contract.[3] Section 1.4 of the 1984 agreement between Indian Head Industries and Thyssen-Bornemisza provides:

Buyer hereby agrees to assume, as of the Closing Date, all liabilities and obligations for all accounts payable, leases, purchase and sales orders, contracts and other agreements remaining to be performed by the Divisions and all other liabilities and obligations (*including, without limitation, products liability* and, except as provided in paragraph 13.1 herein, workers compensation claims) arising out of relating to (sic) the business and operations of the Divisions [Detroit Gasket and MGM Brake], whether arising prior or subsequent to the date hereof ...

(Doc. No. 96, Resp., p. 3; Doc. No. 45, Ex. A)

Reviewing the language of the policy and the 1984 agreement at issue, the Court finds Exclusion "a" plainly and unambiguously excluded liability assumed by Indian Head Industries under any contract or agreement. The 1984 agreement plainly and unambiguously states that Indian Head Industries expressly assumed all liabilities, specifically noting "without limitation, products

---

[3] "Incidental contract" means any written lease of premises, easement agreement, indemnification required by a municipality, sidetrack agreement or elevator maintenance agreement. (Policy, Bates No. IHI 009070)

liability" arising out of the business and operations of Thyssen-Bornemisza and its divisions. There is no ambiguity in the Exclusion "a" language or in the 1984 agreement wherein Indian Head Industries expressly assumed the products liability claims of Thyssen-Bornemisza. It is noted that the exclusion language included an exception to the exclusion regarding warranty of fitness or work, yet the policy did not expressly except the 1984 agreement where Indian Head assumed Thyssen-Bornemisza's products liability claims. Courts have recognized as plain and unambiguous language excluding bodily injury expressly set forth in the exclusion portion of an insurance policy. *See, American States Ins. Co. v. Home Indemnity Co.,* 2000 WL 33405386 at * 3 (Mich. App. Oct. 24, 2000)(unpublished).

Indian Head Industries' argument regarding successor liability is not applicable since Indian Head Industries expressly assumed all the products liability claims of Thyssen-Bornemisza in the 1984 agreement. There is no need to impose successor liability on Indian Head Industries. Successor liability is imposed on a successor corporation where the successor corporation denies liability on claims brought against the predecessor corporation. *See Foster v. Cone-Blanchard Mach. Co.,* 460 Mich. 696, 702 (1999). If Indian Head Industries expressly agreed ***not*** to assume the product liability claims against Thyssen-Bornemisza in the 1984 agreement, then a successor liability analysis could be applied to determine if Indian Head Industries was liable; but, that is not the fact in this case.

Indian Head Industries asks that the Court to ignore the plain language in the 1984 agreement wherein Indian Head Industries agreed to be liable for products liability claims so that the Court could impose successor liability on Indian Head Industries apart from the 1984 agreement in order to get around the plain and unambiguous language in Exclusion "a" excluding coverage on any

11

agreement by Indian Head Industries assuming another's liability. The Court will not do so. Indian Head Industries' Motion for Partial Summary Judgment that Exclusion "a" does not preclude coverage is denied.

> **D.  Indian Head Industries' Motion for Partial Summary Judgment with Respect to "Trigger," "Allocation" and Exclusion "a" Based on Application of the Doctrines of Waiver and Estoppel (Doc. No. 44)**

Indian Head Industries moves for partial summary judgment in its favor asserting that Continental Casualty waived its rights under the policies and is estopped from now raising its defenses because it has covered and defended the more than 50,000 asbestos-related claims since 1994. Indian Head Industries relies on a June 30, 1994 letter from Continental Casualty stating,

> This policy [effective dates of April 8, 1984 to April 8, 1987] does not contain a pollution and/or asbestos exclusion. These exclusions are only effective from April 8, 1987 to April 8, 1988 and forward on the subsequent policy years.
>
> Therefore my correspondence of April 15, 1994 directed to you denying coverage for these asbestos claims/suits is rescinded and our company will provide defense and indemnity for the asbestos suits against Indian Head Industries/Detroit Gasket up to our policy limits.

(Doc. No. 44, Ex. 6; Doc. No. 81-6)

Continental Casualty responds that because it did not adequately reserve its rights in 1994, it is not forever waived or estopped from asserting those rights in asbestos claims against Indian Head Industries filed in 2005 or beyond. Continental Casualty asserts that since October 14, 2005, it has defended Indian Head Industries against the asbestos bodily-injury lawsuits with a comprehensive reservation of rights letter. (Doc. No. 95, Resp., Ex. 1)

The Michigan Supreme Court in *Ruddock v. Detroit Life Ins. Co.,* 209 Mich. 638 (1920) noted that cases where insurance companies have been estopped from raising new defenses have

largely been instances where the company was trying to forfeit a contract by asserting breaches of conditions by the insured not raised earlier by the company. *Id.* at 654. Where the insurance company was *not* trying to forfeit the contract but instead was insisting on the terms of the contract, the Michigan Supreme Court held:

> To apply the doctrine of estoppel and waiver here would make this contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the defendant under the terms of the policy. In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract did make.

*Id.* at 654. Since *Ruddock*, cases which have allowed estoppel or waiver to allow coverage risks not covered by the policy terms or expressly excluded from the policy fell into two broad classes. *Lee v. Evergreen Regency Cooperative & Management Sys., Inc.,* 151 Mich. App. 281, 286 (1986). The first class involves companies which have rejected claims of coverage and declined to defend their insureds in the underlying litigation. In these cases, the Michigan Supreme Court has held that the insurance company cannot later raise issues that were or should have been raised in the underlying action. *Id.* at 286-87. The second class of cases allowing the limits of a policy to be expanded by estoppel or waiver involves instances where the inequity of forcing the insurer to pay on a risk for which it never collected premiums is outweighed by the inequity suffered by the insured because of the insurance company's actions. *Id.* at 287. These actions involve an insurance company's misrepresentations regarding the terms of the policy to the insured or the insurance company's defense of the insured without reserving the right to deny coverage. *Id.* In these cases, the court then weighs the facts to determine whether estoppel or waiver should be applied. *Id.*

In the instant action, Continental Casualty admits that it defended the underlying suits prior

to 2005 without reserving the right to deny coverage. Continental Casualty has since issued a reservation of rights set forth in its October 14, 2005 letter to Indian Head Industries. (Doc. No. 95, Resp., Ex. 1) Because Continental Casualty defended and covered the asbestos-related suits prior to October 2005 without a reservation of rights, Continental Casualty is estopped and has waived any rights it may have under the policies at issue as to those suits. It is noted that Continental Casualty only seeks contribution from Indian Head Industries toward Continental Casualty's expenditures since October 12, 2005, in excess of its obligations. (First Am. Comp., p. 15)

As to the suits filed or submitted to Continental Casualty by Indian Head Industries for coverage under the policies at issue, the Court finds that Continental Casualty is not estopped and has not waived its rights under the policies. These are new claims submitted to Continental Casualty which Continental Casualty did not defend without reservations of rights. Therefore, Continental Casualty may reserve its rights as to these new claims. The Court notes that because these are new claims, the Court need not weigh the inequities since Continental Casualty submitted a reservation of rights to Indian Head Industries. However, weighing the facts currently before the Court as to the underlying suits filed since 2005, Indian Head Industries has not carried its burden as to how it is inequitable to apply the policies at issue, as interpreted by the Court.

Indian Head Industries' only argument is that Continental Casualty has covered and defended the suits since 1994 and so should continue in the future, citing *Detroit Greyhound Employees Federal Credit Union v. Aetna Life Ins. Co.,* 381 Mich. 683, 692 (1969). The Court finds that *Detroit Greyhound* is inapplicable to the instant case. The *Detroit Greyhound* case stands for the proposition that unless a clause is clear, definite, plain and appropriate, courts may turn to the parties' actions and conduct in order for the court to interpret and give meaning to an ambiguous

14

clause. *Id.* at 690-91; *William C. Roney & Co. v. The Federal Ins. Co.,* 674 F.2d 587, 590-91 (6th Cir. 1982)(Interpreting Michigan insurance contract law). In this case, the Court has not found any of the disputed provisions ambiguous. There is no requirement for the Court to consider the parties' conduct in order to give meaning to the provisions at issue in this case.

The Court finds that waiver and estoppel are not available in this case as to the new claims submitted to Continental Casualty for coverage since October 12, 2005. To broaden the coverage of the policies at issue so as to protect Indian Head Industries against risks that were not included in the policies or expressly excluded from the policies is contrary to the agreed language in the policies. Indian Head Industries' Motion for Partial Summary Judgment based on waiver and estoppel is denied as to claims submitted for coverage since October 12, 2005.

### E.     Duty to Defend and Duty to Indemnify

Indian Head Industries in its various briefs asserts that the duty to defend and the duty to indemnify are distinct duties by Continental Casualty and claims that this Court has not made such a distinction.

The insurance company's duty to provide a defense to its insured is contingent on whether the conduct falls within the scope of the policy. *Citizens Ins. Co. v. Pro-Seal Serv. Group, Inc.,* 477 Mich. 75, 84 (2007). The duty to defend is broader than the duty to indemnify since the duty to defend arises in instances in which coverage is even arguable. *Auto-Owners Ins. Co. v. City of Clare,* 446 Mich. 1, 15 (1994). The duty to defend an insured is not limited to meritorious suits, but may extend to claims that are groundless, false, or fraudulent, provided that the allegations even potentially fall within the policy coverage. *Auto Club Ins. Co. v. Burchell,* 249 Mich. App. 468, 480-81 (2001).

When theories of liability which are not covered under the policy are raised with theories of liability that are covered under the insured's policy, the insurer has a duty to defend. *Protective Nat'l Ins. Co. of Omaha v. City of Woodhaven,* 438 Mich. 154, 159 (1991). The duty to defend is not contingent on the precise language of the pleadings, but rather, the insurer must examine the underlying allegations in the third-party or underlying complaint to determine whether coverage is possible. *Citizens Ins. Co. v. Secura Ins.,* 279 Mich. App. 69, 74-75 (2008). When there is doubt regarding whether or not the complaint against the insured raises a theory of liability governed by the policy, the doubt is resolved in the insured's favor. *Id.* Because the insurer has a duty to provide a defense when the allegations even arguably come within the policy coverage, summary judgment is inappropriate when the court cannot determine whether the conduct alleged falls within the policy; fairness requires that the duty to defend continue until such a determination has been made. *Polkow v. Citizens Ins. Co. of America,* 438 Mich. 174, 180-81 (1991).

In this declaratory action, the Court is only aware of one case filed against Indian Head Industries, the *Foltz v. A.J. Baxter Co., et al.* case submitted as an exhibit to one of the responses filed by Continental Casualty as an example of an asbestos-related case filed against Indian Head Industries and its predecessor corporations. (Doc. No. 96, Resp., Ex. 1). However, neither party has moved for the Court to determine whether Continental Casualty has the duty to defend any case, including the *Foltz* case. The Court will not do so without the parties' arguments as to whether Continental Casualty has the duty to defend any particular case. The Court will not issue a blanket opinion regarding Continental Casualty's duty to defend any case, without reviewing the underlying suits at issue and without the parties' arguments as to each suit at issue. As noted above, the duty to defend is not contingent on the precise language of the pleadings, but rather, the insurer must

16

examine the underlying allegations in the third-party or underlying complaint to determine whether coverage is possible. *Citizens,* 279 Mich. App. at 74-75. There are no allegations or facts before the Court that Continental Casualty has so examined the underlying allegations in each of the complaints at issue to determine whether coverage is arguable and its duty to defend is triggered. The Court declines to issue a broad opinion as to Continental Casualty's duty to defend the underlying suits.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Indian Head Industries' Motion for Partial Summary Judgment regarding Trigger of Coverage **(Doc. No. 46)** is GRANTED as more fully set forth above.

IT IS FURTHER ORDERED that Indian Head Industries' Motion for Partial Summary Judgment with Respect to Count III, Exclusion "a" **(Doc. No. 45)** is DENIED.

IT IS FURTHER ORDERED that Indian Head Industries' Motion for Partial Summary Judgment based on Doctrines of Waiver and Estoppel **(Doc. No. 44)** is DENIED as to claims submitted to Continental Casualty from October 12, 2005 and forward.

IT IS FURTHER ORDERED that a Status Conference is set for **Tuesday, May 29, 2012 at 2:30 p.m.** The Court will issue dates for a Final Pretrial Conference and Trial at the conference.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: April 12, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on April

12, 2012, by electronic and/or ordinary mail.

             S/LaShawn R. Saulsberry
             Case Manager